## RICH *v.* ELDREDGE.

A *motion to dismiss an appeal from the decision of a commissioner on an insolvent estate, on account of the neglect of the appellant to furnish to the estate a bond of indemnity against costs, will not be granted if made after two continuances of the cause, a reference to an auditor and his report thereon.*

Upon the trial of such an appeal, the plaintiff relied upon and used before the jury, against the defendant's objection, an account against the deceased, annexed to an affidavit filed by the plaintiff for the purpose of obtaining a jury trial after the coming in of the auditor's report, which account varied in amount, in the number of items charged, and was in other respects different from the original account filed in the probate court, and used before the commissioner and the auditor.—*Held,* that this proceeding was irregular, and that the verdict should for this cause be set aside.

APPEAL, by George Rich against Watson K. Eldredge, executor of William Osgood, from the decision of commissioners of insolvency on the estate of Osgood. The defendant contended that under the statute of 1844 (Comp. Laws, ch. 416, sec. 4), the creditor was bound to file in the probate office a bond to indemnify the estate, and no such bond having been filed in the present case, moved that the appeal be dismissed for that cause, which motion the court denied.

The declaration was in assumpsit, and contained three counts, the first upon an account annexed, amounting to $534.80; the second for $500, goods, wares, &c., sold and delivered; and the third for $200, work and labor done and performed. Plea, the general issue and statute of limitations, with a set-off.

At the April term, 1859, the case was referred to an auditor, who, at the October term, 1859, made a report, disallowing the whole of the plaintiff's claim, and the whole of the defendant's set-off, and finding nothing due to either party.

The plaintiff's claim, as presented before the commissioners of insolvency, and as contained in the account annexed to the declaration, was as follows:

Rich *v.* Eldredge.

| William Osgood to George Rich, | | Dr. |
|---|---|---|
| 1849, April. | To 6 days' driving logs, at $1.50 per day, | $9.00 |
| 1850, April. | To 8 days' driving logs, at $1.50 per day, | 12.00 |
| 1851, March. | To 53,725 feet white pine, in logs, at $8 per M., | 429.80 |
| May. | To 8 days' driving logs, at $1.50 per day, | 12.00 |
| Oct. | To 2 men, 14 days each, at $1.50 per day, | 42.00 |
| | To 2 men, 6 days each, at $2 per day, | 24.00 |
| | To running 5,661 f't timber from McIndoe's, | 6.00 |
| | | $534.80 |

Upon the coming in of the auditor's report, the plaintiff elected a trial by jury, and filed his affidavit, under the rule, stating the particulars in which he expected to change the result at which the auditor had arrived, and therein specified his claim as follows:

| William Osgood to George Rich, | | Dr. |
|---|---|---|
| 1849. | To running timber from Maidstone, | $150.00 |
| 1851. | To 37,015 feet pine logs, at $8, | 296.12 |
| Nov. | To driving 18,143 feet logs from Guildhall, Vt., to Lebanon, N. H., | 150.00 |
| | | $596.12 |

| Contra, | | | Cr. |
|---|---|---|---|
| | By cash in 1851, | $115.00 | |
| | "  "  " 1852, | 93.00 | |
| | " 4 axe helves, | .67 | |
| 1853, March. | " 24 bushels corn, | 20.00 | |
| | " drawing same, | .50 | |
| 1854, Jan. | " cash, | 20.00 | |
| | " 2 axe helves, | .30 | |
| March. | " 26 bushels corn meal, | 28.60 | |
| | | | $278.07 |
| | | | $318.05 |

It was upon the claim thus specified, and for the balance due thereon, that the trial was had before the jury.

The defendant objected that this claim was inadmissible, never having been presented before the commissioners of insolvency, and being entirely different from the claim made before them, especially as to the first and last items. But the court overruled the objection, limiting the amount to be recovered under the first item to the amount claimed before the commissioners for services rendered in 1849, and the amount to be recovered under the last item to the amount claimed before the commissioners for services rendered in 1851.

There were other questions raised upon the case as transferred, not material to be stated. The jury having returned a verdict for the plaintiff, the defendant moved that the same be set aside.

*Benton & Ray*, and *Hibbard*, for the plaintiff.

*D. Blaisdell*, and *Lund*, for the defendant.

NESMITH, J. This was an appeal from the report of the commissioners of insolvency, on the estate of William Osgood, deceased, as returned to the court of probate in this county, disallowing the claim of said appellant, as a creditor against said estate. At the trial of the case, at the late October term, the defendant moved to dismiss said appeal, and assigned for cause that the appellant had failed to file in the probate office a bond, sufficient to indemnify the estate of the testator against such damage and cost, as might accrue in prosecuting his appeal, and to the acceptance of the judge of probate, agreeably to the fourth section of chapter 172 of the Compiled Laws. The court denied the motion.

Upon an examination of the statutes now in force it is not certain that any bond is required in a case where a

creditor prosecutes an appeal from the disallowance, by a commissioner, of such creditor's claim against an insolvent estate; and, therefore, the ruling of the judge denying the motion to dismiss the appeal was correct. But if the law were otherwise, the ruling was correct upon other well settled grounds. The motion was made too late. The appellee has come into court, answered to the action, submitted to a continuance from term to term, filed his plea in chief to the action, agreed to the appointment of an auditor, and has had the benefit of a report in his favor upon the facts and merits of the case. We now, therefore, think he must be considered as having waived this privilege, under the presumed expectation of deriving equal or greater advantages to himself and estate, by submitting to the full jurisdiction of this court and trying his matters of controversy with the plaintiff. A point similar in principle to this was settled in *Farnum* v. *Davis*, 32 N. H. 302. See, also, *Haydock* v. *Duncan*, 40 N. H. 45; *Warren* v. *Glynn*, 37 N. H. 340; *Gilmanton* v. *Ham*, 38 N. H. 103.

The defendant objects in this case that the plaintiff's claim, which was tried by the jury, and upon which their verdict was founded, varied materially from his claim, which was originally presented to the commissioners upon the estate, was rejected by them and afterward filed with his declaration in the probate office. The case finds this fact, as stated by the defendant.

The aggregate amount of the plaintiff's original claim, as presented to the commissioners and disallowed by them, was $534.80. It embraced seven distinct items of account, commencing with April, 1849, and terminating with a charge made as of October, 1851. This original account does not show any credits to the testator. The plaintiff's claim, used upon the trial before the jury, amounted in the aggregate to $596.12, being greater in amount than the original account, by $61.32. It em-

braced but three items, with different dates, and no one of them comparing in amount with the items of the original account. This account had a credit, composed of sundry payments, amounting to $278.07, leaving a balance in favor of the plaintiff of $318.05. This account appears to have been the one used on trial, and commented upon by the judge who tried the case.

It appears to us that the statute is explicit on the subject, and directs plainly as to the claim which is first, ultimately and solely to be declared upon and tried by the several tribunals assigned by law to adjust it. The statute (Comp. Stat., ch. 172, sec. 1) provides "That any creditor, dissatisfied with the decision of the commissioners upon any claim by him exhibited, may appeal therefrom by petition to the judge of probate, filed in his office within thirty days after the acceptance of their report, and shall file therewith a declaration in proper form upon his claim." Section 2 provides that "the judge shall order the administrator to be served with a copy of such petition and declaration, and the creditor shall enter his action at the next court of common pleas, and produce attested copies of such petition, declaration and order of notice, and evidence of compliance with such notice."

As required by the statute, the plaintiff's claim, existing in the form of an account, appears to have been made the basis of his declaration, consisting of three separate and appropriate counts; the first count being upon an account annexed for $534.80, and to which the plaintiff's account was duly annexed; and the second count for $500, for goods, wares, &c., sold and delivered; and the third for $200 worth of work and labor done and performed. The second would legitimately cover the white pine logs, sold and delivered by the plaintiff to the testator, as of May, 1851, at the price of $429.80. The third count would appropriately apply to the remainder of the plaintiff's ac-

count, being $105, and entirely composed of charges for labor done, under six different specific charges.

In accordance with the statute, the plaintiff or appellant must serve a copy of his declaration upon the executor, the defendant, who is permitted to examine the claim of the plaintiff, and can readily compare it with the claim which has been before presented to the commissioners upon the estate. Here is thus laid the legal foundation of the subsequent proceedings to be had in the court of a higher jurisdiction, where the plaintiff may have his claim again tried by the jury. This case finds the action entered in court, the defendant answering to the action, and filing his plea and set-off, the same claim of the plaintiff, which had once been before the commissioners, again referred to an auditor; and the auditor, after a hearing of the parties, reporting upon the facts before him, and finding nothing due the plaintiff. An affidavit, under the rules of the court, was then filed, setting forth the particulars wherein the plaintiff expected to change the result to which the auditor had arrived. Under the cover of this affidavit, a new statement of the plaintiff's claim was presented, every item of which is materially changed, a larger amount than was first claimed sought to be recovered, a credit given to the testator, and a balance struck; and upon this claim, thus specified, and for the balance due thereon, the trial was had before the jury.

As a question of practice this procedure becomes important. Is this a specification of the plaintiff's claim, and can it be legally regarded as such? The charge in the original account, under April, 1849, was for six days' driving logs, at 1.50 per day, $9. The charge in the substituted account stands thus, "1849 (the month omitted) : To running timber from Maidstone, $150," making a difference of $141 in the labor account for that year. Nothing is charged in the second account for labor done in 1850,

while in the original account there was the charge, "1850:
April: For eight days' driving logs, at $1.50 per day, $12."
The large item, for white pine logs, charged in the origi-
nal account, as sold and delivered to the testator, as of
March, 1851, in quantity at 53,725 feet, at $8 per thou-
sand, $429.80, is reduced and varied in the new account thus:
"1851 (month omitted): 37,015 feet, at $8, $296.12."
The other four items of the original account are condensed,
in the new account, into one item, and increased from $84
to $150, charged as of November, 1851, instead of May
and October, 1851, as charged in the original account.

To admit the new account as a specification of the
plaintiff's claim, would be to render that which, by the orig-
inal account, was to some extent definite, particular and
certain, in amount and date, much more vague, indefinite
and uncertain.   Therefore, the objects of a specification
would be defeated, by admitting this account to explain what
was before in the case.   Nor can this substituted account
be admitted as an amendment in any form.   Its practical
effect would be, against the defendant's objection, to en-
large the amount of the plaintiff's claim, and materially
vary the items thereof, so as to introduce new matter, and
thereby falsify the original record of the probate as well
as of this court, upon which he is bound to stand.   The
whole declaration is changed, and this, too, without leave
of the court, and against the provisions of the law.   The
defendant is called upon, at a late stage of the proceed-
ings, to meet new claims, irregularly introduced into the
case, after he is presumed to have prepared his evidence
to meet the case before tried before the commissioners
and auditor.

The plaintiff's second or new account, therefore, not
being recognized as properly introduced before the court,
under the statute on this subject, not being annexed to
his original declaration, constituting no part of the record
that originally laid the foundation of his case, and sub-

stantially changing and enlarging his claim, and being irregularly substituted here, against the objection of the defendant, for these obvious reasons should not have been submitted to the jury. See the case of *Laighton* v. *Lord*, 29 N. H. 256, which is fully in point, and discusses the legality of amendments of this character in all their bearings and consequences.

It should be one of the duties of a court to hold the parties litigant before them to an honest and consistent action.   The plaintiff is presumed to have known the precise situation of his dealings and the state of his accounts better, at the time when he first presented his claim against this estate, than two or three years afterward, because, being nearer the time when the contracts were made, and when the transactions happened, the memory must be fresher in relation to them.   Hence it is not a hard or severe or new rule, to hold a party to the charges he made at or near the time they purport to have been made, and when once made, to stand by them, both as regards date and amount, in each and every particular. If a party can not sustain his own record, his weakness necessarily becomes his adversary's strength, to which he is entitled.

The claim of the plaintiff which was presented to the commissioners, and there tried, and afterward brought into court by appeal, and there again tried by the auditor, must be the claim, and the only claim legally before this court, and the only one admissible to be presented to the jury.   The plaintiff's second account or claim, introduced *pro forma*, as it appears as a part of his affidavit, for the purpose of setting aside the auditor's report, and obtaining a trial by jury, was inadmissible for any other purpose, and was not properly before the jury.   Although one of the charges in this second account diminished a like charge of the same character, found in the regular claim, yet the other two items embraced the large sum of $207, which

was not charged for the like services in the original account.

It may be suggested that, under the charge of the court, the defendant might not have suffered in his rights. But, we think, the large amount claimed here, connected with the apparent liberality of the plaintiff, in allowing parts of his account by credit, was calculated to mislead the jury, and reasonably might have so operated on their minds as to induce them to allow a larger sum to the plaintiff than they might have otherwise done, if the account annexed to the plaintiff's declaration had alone been considered by them.

The exception of the defendant is well taken, and the verdict must be set aside, and

*A new trial granted.*